White Brass Cast. Co. v. Automatic Rec. Safe Co., 198 Ill. App. 425.

## White Brass Castings Company, Appellee, v. Automatic Recording Safe Company, Appellant.

### Gen. No. 21,375.   (Not to be reported in full.)

Appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Reversed and judgment for appellee for $3,219.93. Opinion filed March 28, 1916. Rehearing denied April 10, 1916. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

Action by White Brass Castings Company, plaintiff, against Automatic Recording Safe Company, defendant, for value of merchandise delivered and cash paid out, the amount claimed as due on account being $6,193.92, against which defendant claimed a set-off of over $13,000. From a judgment in favor of plaintiff for $3,519.93, defendant appeals.

Plaintiff was a manufacturer of castings and defendant was engaged in selling "little household savings banks," called safes. Under arrangements between them the former manufactured the parts and assembled them, and sent monthly bills for the same, which appear to have been paid regularly for over two years. This appeal brought up for review, the refusal of the court to allow three items of set-off, (1) one for $300, the cost of "fillers" made by plaintiff, and delivered and charged to defendant against its protest; (2) one for $528.67, the aggregate of an increased price of one-half cent charged on safes made and furnished between October 1, 1912 and January 1, 1914; and (3) one for $10,285.92, being for what defendant called an overcharge for material delivered between April, 1910 and September, 1913.

Plaintiff at defendant's request made a written proposition in 1909 to manufacture the parts of the safe at certain specified prices which does not appear to have

426    APPELLATE COURTS OF ILLINOIS.

White Brass Cast. Co. v. Automatic Rec. Safe Co., 198 Ill. App. 425.

been acted on, defendant's secretary testifying that when it became ready to arrange with plaintiff to do its business, the latter raised its price. There was a futile effort to hold plaintiff to its original proposition. The subject of changed prices became a matter of discussion and correspondence, but the goods were billed and accepted at the changed prices up to the close of the parties' dealings, and were paid for without protest up to the accruing of the account sued on. It is the difference between the prices contained in the proposition of 1909 and said changed prices for the material furnished that constitutes the so-called overcharges in the said third item.

DYRENFORTH, LEE, CHRITTON & WILES, for appellant; GEORGE A. CHRITTON, of counsel.

JOHN C. FARWELL, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

### Abstract of the Decision.

1. ESTOPPEL, § 65*—*when purchaser of goods estopped to question validity of sale.* Where a seller of goods raises prices to the purchaser above those contained in its original written proposition, even though purchaser may have been embarrassed thereby, he may not by way of set-off in a suit for the value of merchandise delivered, question the validity of the contract, especially after having given plaintiff orders on the basis of the new prices and having paid for the goods billed according to such prices.

2. ACCOUNT STATED, § 3*—*what constitutes.* Where orders are given on the basis of new prices without any binding conditions, and goods are paid for on the basis of such prices, the accounts become stated.

3. PAYMENT, § 42*—*what does not constitute mistake of fact authorizing suit to recover money paid.* Where a seller of goods induces the purchaser to accept prices on exaggerated statements of cost of manufacture and materials, but the actual arrangement is for specified prices not based on such cost, it cannot be contended

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

by way of set-off in an action for the value of goods delivered, that there was a mistake of fact whereby the right arose to recover back money paid under such mistake, and an item claimed by defendant for overcharges is properly disallowed, and evidence relating to the cost of material and manufacture properly rejected.

The People of the State of Illinois, Defendant in Error, v. Walter Speedy, Plaintiff in Error.

Gen. No. 21,498.

1. PROSTITUTION, § 3a*—*when venue properly laid in information.* Where an information for pandering designates the State, county and city, where the court exercises its jurisdiction, and in the body thereof, states that the alleged offense was committed "at the City of Chicago" aforesaid, the venue is properly laid.

2. PROSTITUTION, § 3a*—*when place where offense of pandering committed sufficiently designated.* In a prosecution for pandering, the particular house in which the offense was committed need not be designated in the information, but it is a matter of proof which could have been limited by a bill of particulars, if asked for.

3. PROSTITUTION, § 3a*—*when information charging pandering sufficient.* An information for pandering under Hurd's Rev. St., 1913, ch. 38, par. 57g (J. & A. ¶ 3863), which charges substantially in the language of the statute that defendant did by means enumerated therein "procure a female inmate for a house of prostitution," and did cause, etc., "a female person to become an inmate" of such house, and by promises, etc., caused "an inmate * * * to remain therein as such inmate" and did by fraud, etc., procure such a person "to become an inmate of a house of ill fame and to enter a place in which prostitution is allowed and encouraged within the State," and did "procure a female person to come into this State for the purpose of prostitution," states several acts, each of which constitutes the offense of pandering, and they are not inconsistent or repugnant, and they may be charged in one count.

4. PROSTITUTION, § 3a*—*when information for pandering not bad on account of duplicity.* The offense of procuring a female person to come into this State for the purpose of prostitution may constitute a distinct transaction from causing her to enter a house of prostitution or to remain therein, but they may be so connected as

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.